# GEORGE C. JENKINS ET AL. vs. T. DUDLEY RIGGS.

*Highways—Jurisdiction of County Commissioners Under Statute to Close Old Road and Open New Ones—Irregularities Reviewable on Appeal and Not by Bill in Equity—Slight Deviation Between the Description in the Notice and the Final Location of Substituted Road.*

County Commssioners have the power to open and close public roads under Code, Art. 25, sec. 1, etc., and when their action in closing a road is within their jurisdiction, mere errors or irregularities in the proceedings are reviewable upon appeal to the Circuit Court; and equity will not entertain a bill for an injunction upon the allegation of the existence of such errors or irregularities.

When County Commissioners act within their jurisdiction in.altering the location of a public road, the fact that the new road is an inadequate substitute for the old one, or that the alteration has imposed upon taxpayers the burden of maintaining additional roads without any benefit to them, are mere errors to be corrected by an appeal and do not form a foundation for a bill in equity.

The alteration by competent authority in the location of an existing road operates as a discontinuance of such portions of the old road as are not embraced within the limits fixed for the new one, even if no formal or special order of closing or discontinuance is passed.

The Act of 1900, ch. 685, relating to roads in Baltimore County, provides that applications for opening, altering or closing roads shall be by petition to the County Commissioners, after the petitioners shall have given a certain notice setting forth, "as near as may be," the length, and location of the road; that counter petitions may be filed within a prescribed time; that the commissioners are authorized to determine the case as in their opinion shall seem right, and may appoint examiners to view the grounds whenever they shall deem it expedient, and that when the commissioners decide to open a road they may contract with the land owners for the necessary right of way. The defendant in this case owned a farm through which an old county road ran to an intersecting road and there ended. Desiring to change the location of this road defendant invited the County Commissioners to visit the locality, and published a notice that application would be made to close the old road through the middle of the farm and in lieu thereof to open two new roads on either side of the farm. Afterwards a petition was filed by the defendant and nine residents of the vicinity asking for the closing of the old road and the opening of the new ones according to

the notice. No counter petitions against the change were filed. The commissioners, being acquainted with the locality, did not appoint examiners, but made an agreement with the defendant that, upon his opening and grading the new roads and conveying them to the commissioners, that portion of the old road described in the notice should be closed and conveyed to him. Thereupon the defendant, at his own expense, constructed and graded the two new roads, conveyed the beds of them to the County Commissioners; and the latter conveyed to the defendant that part of the old road included in his farm. More than a year was occupied in making the new roads. Sometime after they were open to the public use the plaintiffs, who were residents of the vicinity, filed the bill in this case asking for an injunction to restrain defendant from closing the old road, alleging lack of jurisdiction of the commissioners in the premises; that defendant had misrepresented to adjoining owners the location of the new roads and hence no counter petitions had been filed, and that there had been other irregularities in the proceedings. *Held*, that, although some of the co-signers of defendant's petition for closing the road misunderstood the proposed location of the new roads, yet the petition they signed plainly designated the location as made, and the evidence fails to show that the defendant fraudulently induced them to sign by any misrepresentations as to the direction in which the new roads would run.

*Held*, further, that it is not necessary that the notice and petition should describe with exactness the location and length of the new roads, but the commissioners are authorized under the statute, in the final location, to deviate somewhat from the description contained in the petition, and that in this case the new roads as finally constructed and accepted did not differ materially from those designated in the notice and petition; and that therefore the jurisdiction of the commissioners, which attached upon the giving of the notice and the filing of the petition, was not affected by such slight deviations.

*Held*, further, that proceedings in this case were to alter an old road by closing part of it and by opening new roads in its place, and it was proper for the commissioners to agree with the defendant that the old road should be closed in consideration of his conveying to them the land for the new ones and that the defendant is authorized to inclose and appropriate the old road.

Appeal from the Circuit Court of Baltimore County (BURKE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*W. Irvine Cross* and *Oscar Wolff* (with whom were *Frank*

*I. Duncan* and *Redmond C. Stewart* on the brief), for the appellants.

*D. G. McIntosh* and *Jno. I. Yellott* (with whom was *Alfred R. Riggs* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County dissolving a preliminary injunction which had been issued to restrain the appellee *pendente lite* from obstructing a public road which crossed his farm. The material facts of the case as they appear from the record are as follows:

In the year 1900 the appellee, Riggs, purchased a farm, with a residence and other buildings thereon, lying along the west side of the Garrison Forest road in the Green Spring Valley in Baltimore County. That road runs nearly north and south and the farm abuts on it from the Red House road on the north to Stevenson's station on the Northern Central railroad on the south.

At the date of Mr. Riggs' purchase an old and much travelled road known as the Green Spring Valley road ran in a southeasterly direction entirely across the farm near its centre separating the residence from the barn and other buildings and extending to the Garrison Forest road but no further. This old road had been used by the public for more than a century but there is no evidence that the title to its bed had ever been acquired by the County Commissioners. As the old road extended easterly only to the Garrison Forest road persons travelling in that direction were compelled when they reached the latter road to go upon it either north to the Red House road or south to Stevenson's station in order to reach another road running easterly.

The old road was at that time out of repair to such an extent that the roads' engineer of the county expressed the opinion that it would cost about eighteen hundred dollars to put in proper condition the part of it which traversed the Riggs farm. Mr. Riggs desiring to relieve the centre of his

farm and buildings from the road and being willing to furnish the land through other portions of the farm for a road or roads to be used in substitution therefor discussed with his neighbors owning the lands in the vicinity the project of procuring the opening and construction of a new road in lieu of the old one.   His advances were met in a very friendly spirit by those whom he approached and several schemes for the location of the proposed new road were considered by him. He at first thought of opening two new roads in straight lines diagonally across the farm from the point at which the old road entered it, one to run northeasterly to the Red House road and the other to run southeasterly to Stevenson station, but he abandoned the plan because he came to the conclusion that it would divide the farm to a disadvantage.

Before taking any formal steps toward making the change in the road he requested the County Commissioners to visit the farm and give him their views upon the subject.   They went several times to the farm and, after examining the locality, gave expression to favorable views of the proposed change of location of the road provided there should be no objection to it from the people of the neighborhood, but they informed Mr. Riggs that he would have to proceed by petition in the usual way to have the change made.

Mr. Riggs then applied to the county roads' engineer to locate the new road.   The engineer did as requested and located the two new roads, one running north and then east to the Red House road and the other running south and then east to Stevenson station, as indicated by the following plat, and laid them down on a blue print plat of the farm.

Mr. Riggs handed the blue print thus marked by the engineer to his counsel and they prepared from it and had published, as required by sec. 206 of ch. 685, of the Local Acts of 1900, enacting the then Road Law of Baltimore County, the following notice:

### "Road Notice.

"Application to close a portion of an old road and in lieu thereof to open two new roads in the Third Election District of Baltimore County. This is to give notice that after the expiration of thirty days from the first publication of this notice the undersigned will make application to the County Commissioners of Baltimore County to close a portion of an old road and in lieu thereof to open two new roads as follows:

"To close that portion of the Garrison Forest road in the neighborhood of Stevenson station in the Third District of Baltimore County, beginning at the division line of Paul Burnett's and T. D. Riggs' land, and running east past Mr. Riggs' residence until it intersects at right angles the county road running across the Green Spring Valley to Stevenson station, and to open in lieu thereof a road beginning at the point first mentioned and running with a northerly course about thirteen hundred feet through and across the property of the said Riggs; thence easterly about one thousand feet until it meets the road now known as "Red House Road" at the southeast corner of Mr. Riggs' ore bank, and also a road beginning at the same point as the former one and running south on the division line between the land of S. M. Shoemaker and T. D. Riggs about eleven hundred feet until it crosses the branch; then taking an easterly course about sixteen hundred feet to Stevenson station.

T. Dudley Riggs."

A formal petition, referring to this notice and asking for closing the old road and opening the new ones in lieu of it as therein mentioned, was filed in due course with the County Commissioners. This petition was signed by nine residents of the vicinity of the farm among whom were two of the present appellants and the appellee. No counter petition having been filed opposing the proposed change of roads, the County Commissioners, who had become familiar with the *locus in quo* during their visits to the farm, did not think it expedient to appoint examiners to view the grounds and report upon the

proposed change, but determined to make it as asked for in
the petition and proceeded in exercise of their statutory pow-
ers to make and enter upon their records the following agree-
ment with Mr. Riggs as to the acquisition of the land for the
new roads.

"Agreement

"In the matter of the opening of new road in the Third
District and closing old road on the application of T. Dudley
Riggs *et al.*

"It appearing to the Board of County Commissioners of
Baltimore County that the notice of application for the open-
ing of two roads and closing part of an old road has been duly
published as required by law, and that fifteen days have elapsed
since the last publication of said notice, and no counter peti-
tion presented or objections filed against said application.

"It is this 11th day of September, 1901, by the Board o
County Commissioners of Baltimore County agreed that upon
the opening of the two new roads as applied for and upon
their being constructed, graded and bridged to the satisfaction
of the Roads Engineer, and upon the execution and delivery
to this board of a proper deed conveying title to the ground
covered by said road for the use of the public, the said two
roads described in said application shall be accepted by this
board as county roads, and the said board agrees that within
a year from the acceptance of the two said new roads they will
macadamize one of the said roads ; and it is further agreed
that the portion of the old road set out and described in said
notice and application be closed at the end of the said year
from the acceptance of the two new roads and be no longer a
county road, and the same be re-conveyed to the said T.
Dudley Riggs.

"And it is further ordered that the Baltimore County Roads
Engineer make a plat of the said two roads to be filed and re-
corded in the office of the Clerk of the Circuit Court for Balti-
more County.

Charles H. Knox,
J. V. Slade,
Benj. J. Taylor.

Mr. Riggs then, in pursuance of the agreement with the
County Commissioners, and at a cost to himself of over $1,400
constructed, graded and bridged the two new roads to the
satisfaction of the Roads Engineer, along the lines laid out

and staked off on the ground by such engineer.    On October
the 11th, 1902, Riggs and his wife *et al.* conveyed the bed of
the new roads to the commissioners who, by a formal order,
passed on October 14th, 1902, and entered upon their rec-
ords, accepted the conveyances declaring that it appeared to
their satisfaction that the roads were not less than thirty feet
wide and duly and properly graded and that they were neces-
sary and convenient for public use.    On the day after the pas-
sage of that order the County Commissioners in pursuance of
their agreement conveyed to Mr. Riggs all of their interest in
the bed of so much of the old road as was included within his
farm declaring in their deed that the land therein described
was "the portion of said Green Spring Valley Road formerly
used as a public road, but recently closed under proceedings
heretofore had in the office of said County Commissioners for
that purpose."

No appeal was taken by anyone to the Circuit Court from
the action of the County Commissioners in reference to these
roads nor was any attempt made to oppose, prevent or inter-
fere with the construction, grading and bridging of the new
roads by Mr. Riggs nor to the macadamizing by the public
authorities of the southern one of the roads at a cost to the
public funds of four thousand dollars, although all of that
work, which was begun early in 1901, was done in open day
and full view of the neighborhood and consumed more than
a year in its performance.

In the state of facts which we have thus outlined and some-
time after the new roads had been completed and thrown open
to public use the bill in this case was filed by certain taxpay-
ers residing near Mr. Riggs' farm asking for an injunction re-
straining him from executing his alleged intention of closing
or obstructing the portion of the old road lying within the limits
of his farm.    The grounds of relief alleged in the bill are:

(1) That Mr. Riggs, by representing to his co-signers of
the petition to the County Commissioners for the change in
the location of the roads that he intended to substitute for the
old road two roads passing through the farm diagonally in

straight lines, fraudulently induced them to sign the petition, and by the same means kept the appellants in ignorance of his true designs and prevented them from filing counter petitions to the relocation of the roads, and that he thereby deceived the commissioners and induced them to enter into the agreement with him as to the roads upon a mistaken apprehension of the true facts of the case.

(2) That the new roads are inadequate and insufficient substitutes for the old one, that one of the new roads is in an incompleted state and unfit for travel, not yet having been macadamized, and that if the old road were physically closed up there would be no safe and convenient road through said valley.

(3) That the relocation of the roads has imposed upon the taxpayers the burden of maintaining additional roads without any benefit to them and for the exclusive benefit of the defendant.

(4) By an amendment to the bill it is averred that the action of the County Commissioners in reference to these roads was *ultra vires* and therefore void.

The answer categorically and in detail denies all of the charges of fraud contained in the bill, relies upon the regularity of the proceedings of the County Commissioners in relocating the roads, avers that both the defendant and the commissioners openly expended large sums of money consummating the change of roads without objection on the part of any of the complainants although the work on the roads was completed nearly two years before the filing of the bill, and relies upon the estoppel arising therefrom and upon the laches of the complainants in filing the bill.

We do not think that the evidence sustains the charges of fraud made by the bill. It is unnecessary to review in detail the testimony upon that issue contained in the record. The parties upon whom the fraud is alleged to have been practiced are all adults and many of them are prominent citizens of well known intelligence and respectability. They acted under no duress and the signers of the petition, which plainly showed

on its face that the diagonal roads were not asked for, were afforded an opportunity to read it when it was presented for their signature. No pressure seems to have been brought to bear upon them to induce them to unite in the application for the change in the roads. They doubtless were animated by neighborly sentiment toward Mr. Riggs and treated him with complaisance in all of their intercourse with him on the subject. They seem to have misunderstood the intended location. of the new roads, but we fail to find any convincing evidence of fraud or deception practiced by him upon them.

If the County Commissioners acted within their jurisdiction in reference to these roads the other matters alleged in the bill were subject to their determination and mere errors made by them or irregularities in their proceedings were reviewable only upon appeal taken, as provided for in the statute to the Circuit Court for Baltimore County, and do not form a proper foundation for a bill in equity. *Greenland* v. *Co. Commissioners,* 68 Md. 62; *Gaither* v. *Watkins,* 66 Md. 581–2; *Co. Commissioners* v. *Union Mining Co.,* 61 Md. 548.

That the County Commissioners had jurisdiction in the present case to change the location of the roads in question we think is plain. Secs. 1, 2 and 12 of the Code of Public General Laws give to County Commissioners control over all the public roads in their respective counties and confer upon them power to open, alter or close any such roads, and this jurisdiction when it has once properly attached was held by us in *Gaither* v. *Watkins* and *Greenland* v. *Co. Commrs., supra,* to be exclusive.

The Act of 1900, ch. 685, provided how this jurisdiction should be exercised in Baltimore County at the time of the institution of the proceedings now under consideration. Sections 205, 206 and 207, provide that all applications for opening, altering or closing roads shall be by petition to the County Commissioners, that persons intending to so petition the commissioners shall give a prescribed notice setting forth as near as may be the length and location of the road, that any person desiring to oppose the application may file counter

petitions within a prescribed time and that the commissioners are authorized to determine the case as in their opinion shall seem right and proper. Section 208 provides that whenever the commissioners shall decide that it is expedient that a road be opened as provided in the preceding section they may contract with the owner or owners of the land through which the road is intended to run for the right of way necessary for said road. Sections 208 to 213 inclusive, then provide for proceedings to be taken by examiners in case the commissioners should deem it expedient to appoint them. Section 215 provides among other things that when no objection shall have been filed the commissioners shall record or cause to be recorded such road as a public road of the county.

It is apparent from these statutory provisions that the jurisdiction of the commissioners attaches, upon the giving of the notice and filing of the petition, to the roads therein described. As the notice and petition are preliminary in their nature and as the commissioners, on the advice of the Roads Engineer or the action of the examiners if such be appointed, may in the final location of the road find it necessary to deviate somewhat from the description contained in the petition, the law has wisely not required the petition and notice to describe with exactness and precision the location and length of the road in respect to which the action of the commissioners is invoked, but those particulars are directed to be stated "as near may be" or, in other words, substantially.

It is contended by the appellants that the roads as laid out by the Roads Engineer and constructed under his supervision and conveyed to and accepted by the commissioners, in the present case differed so materially from those mentioned in the notice and petition that the commissioners had no jurisdiction to make the change of location in the roads which they did. We do not agree with this contention. In our opinion the new roads as finally constructed and accepted by the commissioners did not differ sufficiently from those mentioned in the notice and petition to affect the jurisdiction of the commissioners.

The proceedings in this case were not separate and independent applications for the opening of the new roads and the closing of the old one.   They were in the nature of proceedings to alter the location of an existing road to be accomplished, as such alterations must be, by closing a portion of the old road and opening the new ones to public travel in its place and stead.   It was therefore proper for the commissioners to make the agreement with Mr. Riggs that the old road should be closed through his farm in consideration of his conveying to them the land for the new ones.   As he was the owner of the land on both sides of the entire portion of the old road which was closed no other action than that taken by the commissioners was necessary to authorize him to enclose it and appropriate it to his own use.   It has been repeatedly decided that an alteration by competent authority of an existing road or way operates as a discontinuance of such portions of the old road as are not embraced within the limits fixed for the new one even if no formal or special order of closing or discontinuance is passed.   *Commonwealth* v. *Boston,* 150 Mass. 174; *Mill Creek Township* v. *Reed,* 29 Penna. 195; *Classe* v. *Hamblet,* 27 Vt. 728; *Brook* v. *Herton,* 68 Cal. 534.

For the reasons which we have stated we do not think the appellants have made out a good case for the relief for which they ask.   We also think that the record shows them to have been guilty of such laches in filing the bill as would under any circumstances constitute a grave, if not fatal, obstacle to their success.

The order appealed from will be affirmed.

*Order affirmed with costs.*

(Decided January 18th, 1905.)